## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANN ALBERTS, <br><br> *Plaintiff,* <br><br> v. <br><br> BUEFORD DAVIS BUMGARDNER, JR., CRETE CARRIER CORP., JOHN DOES 1-10 and ABC CORP 1-10, <br><br> *Defendants.* | Civil Action No. 13-5538 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I.     INTRODUCTION

This matter comes before the Court by way of the above-captioned Defendants' motion to preclude Plaintiff's medical experts' reports at the time of trial. D.E. 53. At the outset, the Court notes that experts' reports are generally inadmissible at trial, although they can be used for different purposes, such as impeachment. As a result, the Court construes the motion as one to preclude the experts from testifying based on the alleged shortcomings of the reports. The Court reviewed all submissions made in support and opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion is granted.

---

[1] Defendants' brief in support of its motion (D.E. 53) will be referred to as "Def. Br." Plaintiff's brief in opposition (D.E. 57) will be called "Pl. Opp." Defendants' reply brief (D.E. 59) will be referred to as "Def. Rep."

## II.    FACTS AND PROCEDURAL HISTORY

On August 25, 2011, Defendant Bueford Davis Bumgardner, Jr. was allegedly operating a truck owned by Defendant Crete Carrier Corp. ("Crete"). Compl. ¶ 3 (D.E. 1-1). Bumgardner struck Plaintiff MaryAnn Albert's vehicle causing her to sustain injuries (the "Accident"). *Id.* ¶ 4. As a result of the Accident, Plaintiff claims that she exacerbated preexisting injuries to her hands, wrists, back, shoulders, and knees. Plaintiff's Deposition ("Pl. Dep.") 150:16-21 (D.E. 53-2). Plaintiff's damage claims are limited to exacerbation of preexisting injuries. Plaintiff filed a three-count Complaint alleging negligence and recklessness claims against Bumgardner and claims primarily sounding in *respondeat superior* against Crete. *Id.* ¶¶ 2-17.

Prior to the Accident, Plaintiff was involved in numerous other accidents. Plaintiff was involved in motor vehicle accidents in 1983, 1987, and 2004. Pl. Dep. 10:10-17. Plaintiff also had a fall-down accident in either 1994 or 1995. *Id.* 22:22-25. As a result of these accidents, Plaintiff had a number of pre-existing injuries at the time of the Accident. Plaintiff testified that they included injuries to her hands, wrists, cervical, thoracic, lumbar, shoulders, and knees. *Id.* 150:16-21. Plaintiff stated that these injuries became "extremely worse" after the Accident. *Id.* 150:21.

Plaintiff submitted two expert reports and a supplemental report in support of her claim for causation and damages. On March 6, 2015, Dr. William Vonroth, Jr., M.D. authored an expert report concerning Plaintiff's injuries (the "Vonroth Report"). D.E. 53-3. Dr. Vonroth recounted that on the day of Plaintiff's Accident she had "increased symptoms across her neck, head, arms, hands, and low back -- thoracic area -- along with both knees and ankles," as well as "increased numbness in both wrists." *Id.* at 1. Dr. Vonroth examined Plaintiff on March 6, 2015, and found that she had "sensitivity with motion of the neck" consisting of "facet complaints," but with full

2

range of motion. *Id.* at 2. Plaintiff had "some weakness and abduction of both shoulders" and limitation "with flexion extension[ ] of the lumbar spine." *Id.* Plaintiff had "crepitus and discomfort" in her left knee and "slight fullness" in her ankle. *Id.* Plaintiff complained that is was difficult to engage in prolonged walking and noted that her symptoms are most prevalent in the morning. *Id.*

The Vonroth Report opined that Plaintiff "had quite a bit of pre-existing conditions that would be aggravated [by the Accident] that would probably not be as significant as [Plaintiff] experienced, if she did not have the pre-existing condition[s]." *Id.* at 3. Dr. Vonroth stated that Plaintiff's "pre-existing lumbar spine surgical procedure[ ] would lead to further inflammation and scarring and [Plaintiff's] difficulty walking would correlate to more spinal stenosis." *Id.* The Vonroth Report found that the impact from the Accident "correlate[s]" with Plaintiff's aggravation in her wrist and arms. *Id.* Dr. Vonroth explained that due to the Accident the "pre-existing pathology in the left knee[ ] would further deteriorate and cause unnatural changes that would be anticipated with this pre-existing condition and contribute to further changes, which will necessitate [Plaintiff] having a total left knee."[2] *Id.* In sum, Dr. Vonroth concluded that Plaintiff's complaints to her "cervical spine, lumbar spine, radiating symptoms in both legs, increased symptoms in the left knee, the stiffness and complaints in the ankles" were "aggravated[ ] in the motor vehicle [A]ccident." *Id.*

On November 1, 2016, Dr. Vonroth supplemented his report after he had the opportunity to review Plaintiff's February 5, 2013 MRI. D.E. 53-3. Dr. Vonroth stated that if Plaintiff's injured rotator cuff is not repaired and the symptoms continue, then the "inevitable degenerative changes between the humeral head and acrominon [sic] will be quite significant and have a greater

---

[2] The Court assumes that the report meant to indicate a total left knee "replacement."

likelihood of a necessity of having a conversion to a total shoulder prosthesis in the patient's lifetime." *Id.*

On July 3, 2016, Dr. Jeff Chung, M.D., issued an expert report describing Plaintiff's injuries (the "Chung Report"). D.E. 53-4. Dr. Chung noted that prior to the Accident, Plaintiff "was able to stay active, take care of her family, and work a full time job at a busy medical practice with manageable chronic body pains as a result of spinal degeneration and fibromyalgia." *Id.* at 1. Dr. Chung opined that since the Accident, Plaintiff's pain "worsened" in "her lower back, legs, knees, hips, wrists, and forearms" causing "her body pains from fibromyalgia and spinal degeneration" to "amplif[y]." *Id.* The Chung Report stated that Plaintiff's "chronic fatigue, weight gain, and inability to lose weight" has been "exacerbated since her [A]ccident" due to her chronic pain and decreased activity level. *Id.* Dr. Chung explained that Plaintiff has difficulty climbing the stairs in her home, doing chores, and getting in and out of her motor vehicle. *Id.* at 1-2. In sum, the Chung Report opined that Plaintiff's [A]ccident "set in motion and directly caused many of [her pre-existing] conditions to worsen significantly over the past four years." *Id.* at 2.

Defendants filed a motion to preclude the Vonroth and Chung Reports at trial, which Plaintiff opposes. On July 19, 2017, the Court issued a text order directing Defendants to file a letter addressing Plaintiff's arguments that (1) the verbal threshold under the Automobile Insurance Cost Reduction Act, N.J.S.A. 19:6A-1.1 to -35, does not apply in this matter and (2) a comparative analysis is unnecessary because this is not a verbal threshold case. D.E. 58. Defendants filed a letter in response to the Court's Order contending that the verbal threshold does not apply in this matter, but a comparative analysis is necessary even in a non-verbal threshold case. D.E. 59.

## III. STANDARD OF REVIEW

## A. Federal Rule of Evidence 702

"Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir.1997) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To fulfill its role as gatekeeper, the court analyzes the admissibility of an expert's testimony pursuant to the following three requirements under Federal Rule of Evidence 702: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact."[3] *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994)). In this matter, the first two requirements are not at issue.

The third requirement, otherwise known as the "fit" prong, "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Paoli,* 35 F.3d at 743. "An expert opinion is not admissible if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996). Additionally, "if an expert opinion is based on speculation or conjecture, it may

---

[3] The full language of Federal Rule of Evidence 702 is as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

be stricken." *Id.*; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) (noting that expert's testimony may not be based on "subjective belief or unsupported speculation").

### B. Net Opinion Rule

"Under New Jersey law, an 'expert's bare conclusions, unsupported by factual evidence' are an inadmissible 'net opinion.'" *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008) (quoting *Buckelew v. Grossbard*, 87 N.J. 512, 524 (1981)). Under the net opinion rule, an expert's opinion "must be based on a proper factual foundation." *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super. 309, 323 (App. Div. 1996). An expert's "testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." *Id.* (quoting *Vuocolo v. Diamond Shamrock Chems. Co.*, 240 N.J. Super. 289, 299 (App. Div. 1990)). In other words, "[t]he net opinion rule requires the expert to give the 'why and wherefore' of the opinion, rather than a mere conclusion." *Curtis v. Besam Grp.*, No. 05-2807, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007).

"[T]he 'net opinion' rule is neither an evidentiary rule under the Federal Rules of Evidence nor [an explicit] factor in the *Daubert* analysis." *Holman Enter. v. Fidelity & Guar. Ins. Co.*, 563 F.Supp. 2d 467, 472 n.12 (D.N.J. 2008). However, some courts in this district analyze net opinion arguments under *Daubert*'s "fit" requirement. *See Jersey Cent. Power & Light*, No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008). Other courts do not directly analyze net opinions under *Daubert*, but nonetheless view the issue as whether the expert's opinion is of "assistance to the trier of fact" and sufficient to establish causation. *May v. Atl. City Hilton*, 128 F. Supp. 2d 195, 198 (D.N.J. 2000) (quoting *Stanley Co. of Am. v. Hercules Powder Co.*, 16 N.J. 295, 309 (1954)). Thus, regardless if courts frame the issue as falling under *Daubert*'s third prong or as an

independent net opinion analysis, the inquiry remains the same -- whether the expert's opinion will assist the trier of fact.

## IV. LAW AND ANALYSIS

Defendants argue that Plaintiff's expert reports are inadmissible under Federal Rule of Evidence 702 and the "fit prong" of the *Daubert* analysis because they contain inadmissible net opinions. Def. Br. 2-3. Defendants maintain that Drs. VonRoth and Chung did not conduct a comparative analysis of Plaintiff's "old" vs "new" injuries. *Id.* at 7-8. Therefore, Defendants contend that the reports will not assist the factfinder in determining the extent of damages sustained by Plaintiff as a result of the Accident. *Id.* at 9-10.

Plaintiff responds that this is a non-verbal threshold case[4] and that such matters do not require a comparative analysis. Pl. Opp. at 6-8. Plaintiff claims that Defendants improperly rely on *Davidson v. Slater*, 189 N.J. 166 (2007) because "*Davidson* discusses the necessity of a comparative analysis solely in the context of a verbal threshold case." Pl. Opp at 7. Plaintiff maintains that Dr. Vonroth and Dr. Chung's reports are not net opinions, but rather "exhibit a deep intimacy with the Plaintiff's injuries and her medical history and show they in fact relied on reliable medical evaluative tests to come to make the conclusions in their reports." *Id.* at 10.

Thus, the Court must decide two issues: (1) whether a comparative analysis is necessary in this matter, and (2) if so, whether Plaintiff's experts properly conducted a comparative analysis so that their reports do not run afoul of *Daubert*'s "fit" requirement by offering inadmissible net opinions. The Court finds that a comparative analysis is necessary here and that Plaintiff's experts failed to properly conduct one. Therefore, Defendants' motion is granted.

---

[4] The parties agree that the verbal threshold does not apply in this case.

"When aggravation of a pre-existing injury is pled by a plaintiff, comparative medical evidence is necessary as part of a plaintiff's prima facie [case]." *Davidson*, 189 N.J. at 185. The plaintiff bears the burden of production to show that the defendant's negligence proximately caused the aggravation of the pre-existing condition and the damages suffered therefrom. *O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am.*, 361 N.J. Super. 264, 274 (App. Div. 2003). These fundamental tort law concepts are not specific to matters that require proof of the verbal threshold, but rather apply to tort claims generally. In *Davidson*, the New Jersey Supreme Court explained as follows:

> Although the parties present their dispute as one focused on the current verbal threshold standard, our determination in this matter turns ultimately on the application of basic tort principles of causation and burden allocation as between plaintiffs and defendants. When a plaintiff alleges aggravation of pre-existing injuries as the animating theory for the claim, then plaintiff must produce comparative evidence to move forward with the causation element of that tort action.

*Davidson*, 189 N.J. at 170.

Here, the Court finds Plaintiff's argument, that a comparative analysis is unnecessary in non-verbal threshold cases, unpersuasive. The *Davidson* Court held that a comparative analysis is necessary when aggravation of pre-existing injuries is at issue, regardless of whether the plaintiff must satisfy the verbal threshold. *See id. Davidson* explicitly stated that this principle was not specific to verbal threshold cases. *Id.* Therefore, the applicability of the verbal threshold is not relevant to the outcome of this motion. Instead, the relevant question is whether Plaintiff's experts conducted a proper comparative analysis.

An adequate comparative analysis requires "an evaluation of the medical records of the patient prior to the trauma with the objective medical evidence existent post trauma." *Polk v. Daconceicao*, 268 N.J. Super. 568, 575 (App. Div. 1993). An example of a proper comparative

8

analysis is found in *Frenklakh v. Lojek*, No. A-2619-05T5, 2007 WL 470640 (N.J. Super. Ct. App. Div. Feb. 15, 2007). In that case, the plaintiff was involved in a motor vehicle accident and allegedly aggravated prior injuries suffered in an earlier accident. *Id.* at *1. The plaintiff's expert conducted a comparative analysis of the two accidents "based upon his independent review of [the] plaintiff's diagnostic test results, his own examination of plaintiff, and the reports of plaintiff's treating physician." *Id.* at *4. The expert also "review[ed] [the] plaintiff's diagnostic test results and treating doctor's report following the [earlier] accident." *Id.* The expert concluded that the plaintiff's injuries were "aggravations of pre-existing bulging discs in the cervical and lumbar spines as shown in the [earlier diagnostic] studies." *Id.* The expert then assigned percentages to reflect the amount of injury caused by each accident. He found that 80% of the plaintiff's lumbar and cervical complaints were caused by the most recent accident and 20% were caused by the plaintiff's prior accident. *Id.* at *3.

In contrast, an example of where an expert conducted an inadequate comparative analysis can be found in *Sargentelli v. Singh*, No. A-0752-04T1, 2005 WL 2445975 (N.J. Super. Ct. App. Div. Sept. 22, 2005). In that case, the plaintiff had been involved in two accidents prior to the automobile accident in question. *Id.* at *1. The plaintiff's expert issued a report that referenced to the two prior accidents and the injuries that the plaintiff sustained in those accidents. However, the report contained "no causal allocation or apportionment of the current injuries among the three traumas." *Id.* The expert supplemented the report by adding his opinion that the plaintiff's condition was attributable 0% to the first accident, 50% to the second accident, and 50% to the accident at issue. *Id.* The *Sargentelli* court concluded that the plaintiff's expert failed to conduct a proper comparative analysis. *Id.* at *2. The Appellate Division explained that the expert

provided no basis or reasoning to support his conclusory allocation of percentages. *Id.* Therefore, the court found that the expert's report was inadmissible as a net opinion. *Id.*

Here, the Vonroth and Chung Reports do not conduct an adequate comparative analysis. Dr. Vonroth does not describe what medical records he examined or when he examined them to assess Plaintiff's pre-existing injuries. The report does not describe the severity of Plaintiff's prior injuries and how much those injuries were exacerbated by the Accident. Instead, the report conclusively finds, without any underlying support or reasoning, that Plaintiff's pre-existing injuries were aggravated as a result of the Accident. For example, Dr. Vonroth states that Plaintiff "had quite a bit of pre-existing conditions that would be aggravated [by the Accident] that would probably not be as significant as [Plaintiff] experienced, if she did not have the pre-existing condition." Vonroth Report at 3. This statement, and the similar conclusory statements in the Vonroth Report, do not assist the factfinder in determining the extent that the Plaintiff's injuries were aggravated by the Accident.[5]

For these reasons, the Vonroth Report will not assist the factfinder in quantifying the degree of Plaintiff's injuries caused by the Accident. *See Sargentelli*, 2005 WL 2445975 at *1-2. Dr. Vonroth's supplemental report does not cure the deficiencies found in the original report. Accordingly, the Vonroth Report, and the supplemental report, are inadmissible net opinions that do not satisfy *Daubert*'s "fit" requirement. Dr. Vonroth will not be permitted to testify as to the findings in his reports.

---

[5] Additionally, the Court notes that much of the Vonroth Report is written speculatively and without necessary causation findings. In the example just cited, for instance, the report indicates that Plaintiff "had quite a bit of pre-existing conditions that would be aggravated [by the Accident] that *would probably not be as significant* as [Plaintiff] experienced, if she did not have the pre-existing condition." *Id.* (emphasis added).

The Chung Report is also deficient. The Chung Report does not indicate that Dr. Chung reviewed any of Plaintiff's prior medical records or if/when he personally examined Plaintiff. The report merely indicates that since Plaintiff's Accident, the pain in her lower back, legs, knees, hips, wrists, and forearms has "worsened." Chung Report at 1. Dr. Chung does not quantify the degree of these injuries before the Accident with their alleged increase in severity afterwards. Although the report describes the impediments Plaintiff experiences in her daily life since the Accident, Dr. Chung provides no opinion that would assist the factfinder in quantifying the extent that the Accident exacerbated these injuries. Instead, the report merely recounts what appears to be Plaintiff's description to Dr. Chung of the physical challenges she endures on a day-to-day basis. *See, e.g.*, Chung Report at 1 (noting that prior to the Accident Plaintiff "was able to stay active, take care of her family, and work a full time job"). In short, the Chung Report will not assist the factfinder in determining the increase, if any, in Plaintiff's injuries due to the Accident. Therefore, the Chung Report is excluded as a net opinion that does not satisfy *Daubert*'s "fit" requirement, and Dr. Chung is precluded from testifying as to the substance of his report.

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion is granted. The Vonroth and Chung Reports are legally inadequate. Both doctors are precluded from testifying as to the substance or contents of their reports. An appropriate Order accompanies this Opinion.

Dated: August 25, 2017

John Michael Vazquez, U.S.D.J.

11